**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Ernest Daniels,<br><br>                Plaintiff,<br><br>vs.<br><br>Amazon.com Services LLC.<br><br>                Defendant. | Case No.: 3:24-cv-00827-CMC-PJG<br><br>**PLAINTIFF'S RESPONSES TO LOCAL RULE 26.03 (DSC) INTERROGATORIES** |

In compliance with Local Rule 26.03 DSC, counsel for the Plaintiff submits the following information:

**(1) A short statement of the facts:**

**RESPONSE:**

Plaintiff, Ernest Daniels, is an African American male and a United States Army veteran. Defendant hired Plaintiff as an Area Manager on or about October 14, 2019. Plaintiff was given three different areas to supervise around the warehouse and supervised over 180 associates. Part of Plaintiff's job in his role as Area Manager was to oversee associate disciplinary actions, including write-ups. In that role, Plaintiff was to read and explain write-ups to employees. Defendant's computer system would generate write-ups to employees for issues, including flagging productivity deficiencies that were linked to the associate's handheld device. Plaintiff would have discussions with associates to review the Defendant's computer-generated write-ups and then document any conversation he had with associates regarding productivity issues into the associates' digital personnel file.

Plaintiff had a conversation with an associate regarding their productivity numbers and generated report on June 1, 2022. Plaintiff received a message to go to Human Resources for a

1

meeting in September 2022, where two Operations Managers, Kristen Strong and Sarah Chrobak, and the Senior Business Partner for Human Resources, James Hughes were present. This September 2022 meeting was regarding the June 1, 2022, conversation that Plaintiff had with an associate. During that meeting, Plaintiff was terminated for allegedly falsifying information regarding that conversation with an associate. Plaintiff input the information and a summary of the discussion he had with the associate into Defendant's computer system. Defendant alleges that Plaintiff never had the conversation with the associate regarding the productivity and further alleges that Plaintiff falsified the documentation regarding the conversation.

In the months following his termination, numerous associates contacted Plaintiff and told him that Defendant employees were saying that Plaintiff had falsified information. In August 2022, Plaintiff was in the early stages of training for a new position. During that training one of the Operations Managers told Plaintiff that despite his qualifications, he believed Plaintiff did not have the aptitude to run the shift as a Lead. The Operations Manager told Plaintiff that he "needed [Plaintiff] to stay on the floor with the associates." Upon information and belief, 85-95% of Defendant's associates who work on the warehouse floor are African American.

Plaintiff was qualified for the job he held and the job that he was training for. Plaintiff always performed at or above the expectations set forth by Defendant. During his employment, Plaintiff never received any write-ups or any discipline. Plaintiff has a master's degree in safety administration and worked for Defendant for approximately three years. Plaintiff was told that he lacked the aptitude for the Lead position he was training for. Defendant only trained and hired white individuals for the Lead positions. Many of Plaintiff s co-workers, including supervisors, would make comments about the clothes Plaintiff would wear, the food he would eat, and the type of car Plaintiff drove, comments Plaintiff believed to be referencing his race.

**(2) The name of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

**RESPONSE:**

1. Ernest Daniels is expected to testify as to all aspects of his case.
2. Operations Manager Kristen Strong is expected to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
3. Operations Manager Sarah Chrobak is expected to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
4. Senior Business Partner for Human Resources James Hughes is expected to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
5. Plaintiff reserves the right to identify additional witnesses during the discovery process and to call upon any witnesses identified by any party in their Local Rule 26.03 Interrogatory responses or discovery responses.

**(3) The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

**RESPONSE:**

At this time, the Plaintiff has not identified any expert witnesses but will provide the required expert witness disclosures within the deadlines set by the Scheduling Order.

**(4) A summary of the claims with statutory and/or case citations supporting the same.**

**RESPONSE:**

<u>**Race Discrimination**</u>

Plaintiff alleges a claim of race discrimination. 42 U.S.C. 2000e-2 provides:

3

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Plaintiff seeks to establish his discrimination claim via both the direct and indirect methods of proof. Indirect method race cases apply the *McDonnell Douglas* burden shifting framework. In applying the framework to race discrimination cases, "the plaintiff must establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the action, she was performing at a level that met [her] employer's legitimate job expectations; and (4) her position remained open or was filled by a similarly qualified applicant outside the protected class." *Clark v. THI of South Carolina at Moncks Corner, LLC*, 586 F.Supp.2d 387, 392 (D. SC. 2007). Once the plaintiff establishes a prima facie case, "a rebuttable presumption of discrimination then arises and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Id*.

With respect to pretext, "Proof that the defendant's explanation [(for an adverse action)] is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 134 (2000). "In appropriate circumstances, the trier of fact can reasonably infer from the

falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id*.

### Defamation

Plaintiff's alleges a claim of defamation;

> The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Murray v. Holnam, Inc.*, 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct. App. 2001). Defamation "allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Id*. Communications are defamatory if they impeach the honesty, integrity, virtue, or reputation of an individual. *Castine v. Castine*, 403 S.C. 258, 266, 743 S.E.2d 93, 96 (Ct. App. 2013). Defamation can occur in both direct and indirect manners; even "[a] mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain." *Id.* at 138-39, 748. (citing *Eubanks v. Smith*, 292 S.C. 57, 354 S.E.2d 898 (1987)). "It is well established that a defamatory insinuation may be made by actions or conduct as well as by word." *Tyler v. Macks Stores*, 275 S.C. 456, 272 S.E.2d 633, 634 (1980).

**(5) Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02.**

    **i. Exchange of Fed. R. Civ. P. 26(a)(2) Expert Disclosures**
    **ii. Completion of discovery.**

**RESPONSE:**

The parties consulted and agreed upon the Scheduling Order filed March 15, 2024.

**(6) The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.**

**RESPONSE:**

    The parties are unaware of any special circumstances at this time.

**(7) The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.**

**RESPONSE:**

    Not applicable.

                      **CROMER BABB & PORTER, LLC**

                      BY: <u>*s/Elizabeth Millender*</u>
                           Elizabeth Millender (#13171)
                           Nicholas J.M. Quatraro (#14122)
                           1418 Laurel Street, Suite A
                           Post Office Box 11657
                           Columbia, South Carolina 29211
                           Tel: 803-799-9530
                           Elizabeth@cromerbabb.com
                           Nicholas@cromerbabb.com

                      *Attorneys for Plaintiff*